UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10367-RGS

UNITED STATES OF AMERICA

v.

EUSEBIO HERNANDEZ

MEMORANDUM AND ORDER ON DEFENDANT'S
APPEAL OF AN ORDER OF DETENTION

July 20, 2015

STEARNS, D.J.

Defendant Eusebio Hernandez is charged with possession of, and conspiracy to possess with intent to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  After a detention hearing on January 9, 2015, Magistrate Judge Hennessy ordered that Hernandez be detained on the grounds that any proposed conditions of release would not reasonably assure his appearance or the safety of the community.  Det. Hr'g Tr. (Tr.) at 86.  On June 16, 2015, Hernandez moved in this court, pursuant to 18 U.S.C. § 3145(b), for release from detention on conditions that he wear an electronic monitoring bracelet, reside with his son Arismendy Hernandez, observe a strict curfew, surrender his Dominican Republic passport, refrain from contacting any codefendants, and report

1

personally or by telephone to the Probation Office as directed.  Def.'s Mot. at 2.

## BACKGROUND

The following facts are taken from Magistrate Judge Hennessey's oral decision, entered on January 9, 2015, ordering Hernandez's pre-trial detention.  In May of 2014, the Drug Enforcement Administration (DEA) began an investigation of suspected narcotics trafficking by codefendant Daniel Perez-Delarosa.  Tr. at 70.  Through wiretaps and physical surveillance, the DEA learned that Perez-Delarosa was trafficking large amounts of heroin, using Hernandez and others as drug couriers.  *Id.* at 70-71.  On December 15, 2014, DEA agents intercepted several telephone calls indicating that Hernandez had been tasked to transport a quantity of heroin to a buyer named Angelo in Pennsylvania.  *Id.* at 71.  The same day, surveilling agents observed Hernandez, accompanied by his daughter Nackley Hernandez, rent a silver Chevrolet Captiva SUV from an Enterprise Rent-a-Car agency in Lawrence, Massachusetts.  *Id.* at 72.  They also witnessed Nackley place a black suitcase in the rear of the SUV.  *Id.*  Hernandez and Nackley then drove to a home at 115 Market Street, in Lawrence, Massachusetts, a location the DEA had previously determined to be the focal point of Perez-Delarosa's drug operation.  *Id.* at 71, 73.  After

carrying the suitcase from the SUV into the residence, Hernandez returned to the SUV with the same suitcase. He then began driving south on Interstate 495. *Id.* at 73.

At this point, the investigating officers asked a Massachusetts state police trooper to conduct a stop of the SUV. *Id.* Hernandez subsequently consented to a search of the vehicle and the suitcase, and informed the trooper that the suitcase belonged to him. *Id.* at 73-74. Inside the suitcase, the trooper found six kilograms of heroin, with a street value of $420,000. *Id.* at 74. After being confronted with the drugs, Hernandez disclaimed ownership of the bag. He explained that the bag belonged to a man named Rafael who had paid him $500 to transport it to New York. *Id.* at 74-75. Hernandez was arrested and later indicted by a federal grand jury for possession and conspiracy to possess with intent to distribute heroin, which carry a combined maximum sentence of twenty years. Gov't's Opp'n Mem. at 4.

## DISCUSSION

The district court reviews a Magistrate Judge's detention order *de novo. United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990). Under the Bail Reform Act of 1984, detention of a defendant is required if "no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  In making this determination, the court is to consider the factors set out in 18 U.S.C. § 3142(g), which include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the defendant's "family ties, employment, financial resources, length of residence in the community, community ties, [and] past conduct."

The government is required to demonstrate, by a preponderance of the evidence, that a defendant poses a risk of flight or, by clear and convincing evidence, that he is a danger to the community.  *United States v. Patriarca*, 948 F.2d 789, 792-793 (1st Cir. 1991).  Because the offenses with which Hernandez is charged carry a maximum term of imprisonment of ten years or more, a rebuttable presumption arises in favor of detention.  18 U.S.C. § 3142(e).  The burden falls on Hernandez to produce evidence rebutting this presumption.  *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991).  Even so, the statutory presumption retains evidentiary weight and is to be considered along with the other relevant factors.  *See id.*; *see also United States v. Perez-Franco*, 839 F.2d 867, 870 (1st Cir. 1988).

Hernandez first contends that he is not a flight risk because of "his minimal criminal record, ties to the community, strong family support, lack

of resources, and willingness to submit to restrictive conditions of release."
Def.'s Mot. at 4.  Hernandez is 61-years-old and has no prior criminal record
(other than a conviction for a minor motor vehicle violation).  *Id.*  While he
was born in the Dominican Republic and retains citizenship there, he moved
to the United States in 1967, and is now a permanent legal resident.  *Id.*  He
has family ties in Massachusetts, including four children and grandchildren,
all of whom live in the Lawrence area.  *Id.*  Since his sole employment is as a
part-time cashier at a convenience store operated by his son Eusebio
Hernandez, Jr., he argues that he "lacks the financial means to flee."  *Id.* at
6.

Despite these contentions, I agree with the Magistrate Judge that
Hernandez presents a palpable risk of flight.  Although Hernandez has family
in Massachusetts, I note (as did the Magistrate Judge) that he retains
"significant ties" to the Dominican Republican.  Tr. at 78.  His daughter
(Nackley) referred to the Dominican Republic as Hernandez's permanent
residence.  *Id.*  Hernandez possesses a Dominican Republic passport, has
spent extended periods of time there during the past two years, and is
romantically involved with a woman there.  *Id.* at 79.  Hernandez also
receives medical care in the Dominican Republic.  *Id.*  There is evidence in
the wiretaps that Hernandez had made arrangements to travel to the

Dominican Republic on December 15, 2014, for a doctor's appointment. *Id.* Hernandez has no real assets in the United States, other than a 2006 Honda valued at $7,000. *Id.* at 80.

Despite his assertion that he lacks the financial resources to flee, he has sufficient funds at his disposal to travel regularly to the Dominican Republic for medical appointments. Gov't's Opp'n Mem. at 7. He also was arrested in possession of over $400,000 worth of heroin. *Id.* at 74; *see Perez-Franco*, 839 F.2d at 870 ("The connections necessary to secure over one kilogram of heroin may reflect the resources necessary to escape with ease to another jurisdiction."). Given Hernandez's age and the potentially lengthy advisory sentence he faces, he has a "strong incentive" to flee to avoid spending a significant part of his remaining life in prison. *See United States v. Marquez*, 113 F. Supp. 2d 125, 128 (D. Mass. 2000); *see also* Tr. at 83. Finally, an electronic monitoring system "does not in any reliably effective way prevent" Hernandez from fleeing; it simply gives notice to the authorities that he has fled. *See United States v. Duran*, 2006 WL 3498337, at *2 (D. Mass. Dec. 5, 2006).

Hernandez additionally argues that he is not a danger to the community because he has no history of violence and was not a leader of the drug conspiracy (as acknowledged by DEA Agent O'Shaughnessy). Tr. at 32.

It is true that a mule who plays a minimal role in a drug trafficking scheme might not know what he is carrying (or its extent), as Hernandez argues. *Id.* at 81. But here I agree with Magistrate Judge Hennessey that the evidence supports the inference that Hernandez was more involved in the enterprise than he admits. I echo his finding that it is "somewhat implausible" that a daughter would entrust her father with a suitcase containing nearly a half-million dollars in drugs without alerting him to its contents, or that he would be willing to abruptly forgo his medical appointment in the Dominican Republic to travel to New York for a measly $500. *Id.* at 82. More important, Hernandez's willingness to conduct drug trafficking in the very community in which his children and grandchildren live demonstrates that he poses a danger to society. Tr. at 85; *see United States v. DiMauro*, 614 F. Supp. 461, 465 (D. Me. 1985) ("Courts interpreting various provisions of the Bail Reform Act of 1984 have held that the likelihood of continued trafficking in narcotics constitutes a danger to the community.").

Finally, Hernandez asserts that "there is a dearth of evidence implicating" him in the conspiracy. Def.'s Mot. at 8. Hernandez points out that the government did not offer direct evidence that he knew that heroin was in the suitcase given to him by his daughter. *Id.* at 7. He also argues that his consent to the search of the suitcase raises a suggestion of ignorance on

his part as to its contents.  *Id.*  The evidence, however, goes well beyond any supposed dearth.  It is simply implausible that a daughter would expose her father to the penalties involved in transporting six kilograms of heroin without informing him of the risks (and the potential profits).  As to his consent to the search of the suitcase, apart from the fact that many persons tend to be compliant in the face of authority, others see a value in cooperation, whether in the form of possible leniency, or the opportunity to raise a defense just like this one.  In sum, the government has proven convincingly that Hernandez poses both a flight risk and a danger to the community.

## ORDER

For the foregoing reasons, Hernandez's motion to release on conditions is <u>DENIED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns</u>
UNITED STATES DISTRICT JUDGE

8